# EXHIBIT "A"

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| ORGANIC CONSUMERS ASSOCIATION, 6771 South Silver Hill Drive, Finland, MN 55603, on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>HANDSOME BROOK FARM, LLC, 4132 East Handsome Brook Road, Franklin, NY 13775; HANDSOME BROOK FARM GROUP 2 LLC, 4132 East Handsome Brook Road, Franklin, NY 13775; and DOE CORPORATION Nos. 1-10 (the names Doe Corporation being fictitious, as the true names are presently unknown),<br><br>Defendants. | Case No. __2016 CA 006223 B__<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

## COMPLAINT

On behalf of the general public, Plaintiff Organic Consumers Association ("Plaintiff" or "OCA"), a non-profit organization, by and through its counsel, brings this action against Defendants Handsome Brook Farm, LLC; Handsome Brook Farm Group 2 LLC; and Doe Corporation Nos. 1-10 (collectively, "Handsome Brook") regarding the deceptive labeling, marketing, and sale of Handsome Brook Farm Pasture Raised Eggs, and alleges the following based upon information, belief, and the investigation of its counsel:

## INTRODUCTION

1.      Due to concerns about health, sustainability, and animal welfare, consumers are increasingly factoring into their purchasing decisions the origins of their food. The growing desire for humanely raised egg products is part and parcel of these trends.

2.      Among other factors, consumers are concerned about how egg-laying hens are

raised, whether the hens have been fed hormones or other drugs, and whether the hens have been confined in cramped and inhumane conditions.

3.      Given these concerns, consumers are increasingly seeking egg products that are "pasture raised."

4.      Reasonable consumers believe that the term "pasture raised" means, at a minimum, that the egg-laying hens enjoy substantial unfettered freedom to roam and forage, with ample square footage of pasture per bird.

5.      The products at issue in this action, at this time, are Handsome Brook Farm eggs labeled "Pasture Raised" (collectively, the "Products").[1]



---

[1] Discovery may demonstrate that additional Handsome Brook products are within the scope of this Complaint, and Plaintiff reserves the right to add them to the definition of the Products. Discovery may demonstrate that the Products fail to conform to additional representations on the label, and Plaintiff reserves the right to add those label representations to its claims.

6.      Seeking to capitalize on consumer beliefs and preferences, Handsome Brook aggressively advertises and promotes the Products as "Pasture Raised." These claims are false, deceptive, and misleading, because often the Products are not pasture-raised, insofar as they do not conform to any understanding that a reasonable consumer would have of the term "Pasture Raised."

7.      Instead, Handsome Brook procures non-pastured-raised eggs from its network of suppliers, and sometimes purchases non-pastured-raised eggs in the open market, and falsely labels those eggs "Pasture Raised."

8.      Handsome Brook touts the "Pasture Raised" attributes of the Products extensively on the Products' labels, as well as on its website and through interviews and marketing materials, because it knows that consumers increasingly place value on the manner in which egg-laying hens are raised and treated.

9.      Truly pasture-raised hen eggs are much more expensive to produce than eggs from hens who are not pastured. Through its practice of labeling both pasture-raised and non-pasture-raised eggs as "Pasture Raised," Handsome Brook has been able to capitalize on consumers' perceptions of what "Pasture Raised" means, to capitalize on consumers' desires for eggs from pasture-raised hens, to undercut the prices of competing egg labels that actually sell eggs exclusively from pasture-raised hens, and thus to expand rapidly (and deceptively) its presence in the consumer market for pasture-raised eggs.

10.      Handsome Brook's false and misleading representations and omissions violate the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C. Code §§ 28-3901, *et seq.*

11.      Because Handsome Brook's labeling and advertising of the Products tends to

mislead and is materially deceptive about the way in which the egg-laying hens are raised and cared for, OCA brings this deceptive advertising case on behalf of the general public, and seeks relief including an injunction to halt Handsome Brook's false marketing and sale of the Products and a court-ordered corrective advertising campaign to inform the public of the true nature of the Products.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over the parties in this case. OCA maintains a presence in the District of Columbia and, by filing this Complaint, consents to this Court having personal jurisdiction over it.

13.     This Court has personal jurisdiction over Handsome Brook pursuant to D.C. Code § 13-423. Handsome Brook has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over it because, *inter alia,* Handsome Brook is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia, or otherwise purposefully avails itself of the laws of this District through its marketing and sales of the Products in this District.

14.     This Court has subject matter jurisdiction over this action pursuant to D.C. Code §§ 28-3905(k)(1)(B), (k)(1)(C), (k)(1)(D), and (k)(2).

15.     Venue is proper in this District under 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District. The Products are available for purchase at stores in the District of Columbia.

## PARTIES

16.     Upon information and belief, through the practices described herein, Handsome

Brook has caused harm to the general public of the District of Columbia.

17.     OCA is a 501(c)(3) non-profit public-interest organization that deals with crucial issues of truth in advertising, accurate food labeling, food safety, genetic engineering, children's health, corporate accountability, environmental sustainability, and related topics.

18.     OCA performs its work throughout the United States, including in the District of Columbia. Some of OCA's staff resides in or near the District of Columbia, including its political director. OCA has members who reside in the District of Columbia

19.     OCA was formed in 1998 in the wake of backlash by consumers against the U.S. Department of Agriculture's controversial proposed national regulations for organic food. In its public education, network building, and mobilization activities, OCA works with a broad range of public interest organizations to challenge industrial agriculture, corporate globalization, and to inspire consumers to "Buy Local, Organic, and Fair Made." OCA's website, publications, research, and campaign staff provide an important service for hundreds of thousands of consumers and community activists every month. Its media team provides background information, interviews, and story ideas to television and radio producers and journalists on a daily basis.

20.     Thus, OCA's focus is on representing the views and interests of consumers by educating consumers on food safety, industrial agriculture, genetic engineering, corporate accountability, and environmental sustainability issues. OCA uses funds it raises to educate consumers, increasing their awareness and knowledge of the agricultural production, and to protect the environment by regenerating organic and/or sustainable agriculture. OCA also uses its funds and member base to pressure food companies to adopt honest labeling practices, to the benefit of consumers.

21.     Since its inception, OCA has advocated for outdoor access and pasture standards for organic animals. Most recently, OCA submitted comments on the U.S. Department of Agriculture's National Organic Program's 2016 proposed rules for outdoor access for poultry, arguing that requiring nothing but bare dirt or concrete in outdoor areas deprives chickens of their ability to express natural behaviors.

22.     Handsome Brook's false and misleading labeling of the Products has frustrated OCA's mission of educating its members and the consuming public about agricultural and labeling practices, by distorting the pasture-raised egg market and degrading consumer confidence in egg labels. OCA has asked its members to boycott brands that are known to provide inadequate outdoor access to their chickens and to buy eggs from truly pasture-raised chickens. Handsome Brook's conduct harms this boycott and advocacy work, forcing OCA to spend additional resources to counteract such misinformation and to alleviate the consumer deception perpetrated by companies like Handsome Brook, through their mislabeling of eggs as "pasture-raised."

23.     OCA has purchased, at Harris Teeter stores located at 1201 First St. NE and 401 M St.SE in Washington, D.C., Handsome Brook Pasture Raised Large Eggs and Organic Pasture Raised Large Eggs in order to evaluate their purported qualities as "Pasture Raised" eggs.

24.     OCA is acting for the benefit of the general public as a private attorney general pursuant to D.C. Code § 28-3905(k)(1). It is a public-interest organization pursuant to D.C. Code § 28-3901(a)(15), and a non-profit organization pursuant to D.C. Code § 28-3901(a)(14).

## FACTUAL ALLEGATIONS

25.     OCA brings this suit for injunctive relief under the DCCPPA, D.C. Code § 28-3901 *et seq.*, against Handsome Brook based on misrepresentations and omissions committed by

Handsome Brook regarding the Products, which Handsome Brook falsely and deceptively labels and markets as "Pasture Raised," when in fact the Products do not comprise exclusively eggs from pasture-raised hens.

**I.    Handsome Brook Labels the Products "Pasture Raised" in Order to Capitalize Upon Growing Desire and Demand for Eggs from Humanely Raised Hens.**

26.    As public awareness has grown regarding the inhumane treatment of animals raised for food, and especially the conditions in which many egg-laying hens are kept, consumers' demand has also grown for humanely produced—specifically, pasture-raised—eggs.

27.    Handsome Brook knows that consumers seek out and wish to purchase pasture-raised eggs.

28.    A 2015 Consumer Reports survey found that it is important to consumers that food not be produced via standard factory-farm methods. For example, 82% of consumers said it was "important" or "very important" to reduce antibiotic use in food production; 84% said the same about improving living conditions for animals.[2]

29.    To capture this growing market, Handsome Brook labels the Products as "Pasture Raised."

30.    Consumers reasonably expect that eggs labeled "Pasture Raised" come from hens who enjoy some minimum standard of care, namely, regular unfettered access to outdoor pasture to roam and forage, with ample square footage of pasture per bird.

31.    Indeed, until very recently,[3] Handsome Brook characterized "Pasture Raised"

---

[2]    *See* https://goo.gl/kC16HY (last visited July 8, 2016).
[3]    At some point within the months immediately preceding the filing of this Complaint, Handsome Brook began removing some of these claims from its website. Handsome Brook continues to label the Products "Pasture Raised" and has done nothing to correct these falsehoods upon which its reputation was established.

according to a 108-square-feet standard on its website,[4] stating (among other claims):

- "Handsome Brook Farm provides lush pasture of more than 108 square feet per hen!";

- "Handsome Brook Farm standards meet or exceed Whole Foods Market standards, Certified Humane Organic Standards, USDA Organic standards, and we have received a 4-Egg Rating from Cornucopia Institute. Most importantly, we regularly receive 3rd party inspections from outside entities to ensure that standards are met"[5];

- "Our hens spend a large portion of their days outdoors on pasture (weather permitting, of course)"; and

- "We provide at least 55 square feet of pasture at a time per hen which, when rotated, is more than 108 feet per hen."

32.    Even today, Handsome Brook's website asserts, "We are strongly committed to the highest standards of quality pasture raised eggs, the ethical and humane treatment of our hens, the well being of our family farms, and fair trade practices."[6]

33.    Brian and Betsy Babcock, the co-founders of Handsome Brook, in extensive interviews and a substantial marketing operation, have touted Handsome Brook as different, and more ethical, than competing egg sellers.[7]

---

[4]    *See* http://www.handsomebrookfarm.com (screenshot acquired March 30, 2016).

[5]    Like the American Humane Association does, the organization behind the "Certified Humane" seal, Humane Animal Farm Care, Inc., also requires that pasture-raised hens have a minimum of 108 square feet of pasture per hen. *See* http://certifiedhumane.org/wp-content/uploads/2015/11/Std14.Layers.5A.pdf (last visited July 18, 2016).

[6]    http://www.handsomebrookfarm.com (last visited July 31, 2016).

[7]    *E.g.*, "This Is What a Genuine Free-Range Farm Looks Like," *available at* http://on.inc.com/29u5zF2 (last visited July 5, 2016) ("The company says that, unlike farmers who claim to raise organic or free-range eggs and then keep their chickens in warehouses, Handsome Brook lets its hens run loose on actual farms."); "Want a Better Egg? So Does Betsy Babcock," *available at* http://bit.ly/29w0RUz (last visited July 5, 2016) (Betsy Babcock interview) ("Q. So what does it mean that your hens are 'pasture-raised?' A. They live in barns in which they have about 2 square feet of space each and two giant doors that give them free access to 12 acres of outside pasture."); Babcock, Betsy, "A Guide to What Eggs You Should ACTUALLY Buy," *available at* http://bit.ly/29hQFgk (last visited July 5, 2016) ("Pasture-raised is the highest quality in terms of ethical treatment of hens. These hens have access to 108 square

34.     No reasonable consumer, seeing the words "Pasture Raised" on the Products, would expect the Products to come from hens who do not spend most of their daytimes with unfettered access to pastures with ample space for roaming and foraging.

35.     In the event that any consumer sought more information, either from Handsome Brook's website or from its marketing materials, that consumer would only have his or her belief confirmed that the Products come from hens who spend most of their daytime in pastures, namely, in "lush" pastures with a minimum of 108 square feet per bird.

## II.     Despite the "Pasture Raised" Labels and Extensive Marketing Campaign, Handsome Brook's Products Contain Eggs From Hens Who Are Not Pasture-Raised.

36.     Despite its labeling and marketing, Handsome Brook's Products contain eggs that do not come from "Pasture-Raised" hens.

### A.     Handsome Brook's Captive Supply Network Includes Hens Who Are Not Pasture-Raised.

37.     In order to fuel its rapid expansion in the pasture-raised egg market, Handsome Brook "partnered" with family farms.

38.     As part of these "partnerships," Handsome Brook encouraged farmers, some with limited or no experience in raising hens, to build barns for hens.

39.     Lacking guidance on chicken care or pasture-raised standards, many farmers who

---

feet per hen. They go outside. They eat bugs. They dust-bathe. They get to be chickens. . . . While it's true that these eggs are a bit more expensive, there are some pasture-raised varieties, such as Handsome Brook Farm Pasture Raised Eggs, that are more reasonably priced than others."); Gee, Kelsey, "Organic Farming Rules Overhauled," *available at* http://on.wsj.com/215Z62v (last visited July 5, 2016) ("Betsy Babcock, founder of organic egg producer Handsome Brook Farm in New York state, said she is pleased to finally see the proposed rules. . . . Her company requires that egg producers selling under its brand give hens nearly 109 square feet of outdoor space each.").

constructed chicken barns and/or purchased flocks in order to sell eggs to Handsome Brook ended up raising hens in conditions that do not fit consumer perceptions of "Pasture Raised"; nevertheless, and despite knowing the conditions in which the hens were actually raised, Handsome Brook labeled and sold such eggs as "Pasture Raised."

40.     Lacking guidance on chicken care or pasture-raised standards, many farmers who constructed chicken barns and/or purchased flocks in order to sell eggs to Handsome Brook ended up raising hens in conditions that were not humane and did not offer hens any significant access to pasture; nevertheless, and despite knowing the conditions in which the hens were actually raised, Handsome Brook labeled and sold such eggs as "Pasture Raised."

41.     Without regard for the actual conditions in which hens are raised on the farms from which it purchases, Handsome Brook has labeled, and continues to label, these Products as "Pasture Raised."

42.     Most farms from which Handsome Brook sources its eggs are located in the northeastern United States, where freezing conditions require birds to be confined, and not pastured, for up to several months per year, and where, many months of the year, pastures are not green. Nevertheless, Handsome Brook has labeled, and continues to label, these Products as "Pasture Raised," without any qualification such as "Seasonally Pasture Raised."

**B.     Handsome Brook Has Purchased Eggs in the Open Market Without Regard to Whether Those Eggs Come From Pasture-Raised Hens.**

43.     As part of its rapid expansion in the pasture-raised egg market, Handsome Brook has also purchased eggs in the open market (i.e., outside its captive supply network) without regard for whether those eggs were purported to be from, or in fact were from, pasture-raised hens.

44.     Handsome Brook knew that the eggs it purchased in the open market were not from pasture-raised hens.

45.     Handsome Brook nevertheless packaged these eggs, including eggs from hens with no significant access to pasture, as its Products in cartons labeled "Pasture Raised," or directed that the eggs be so packaged.

**C.     The "Certification" That Handsome Brook Places Upon the Products Does Not Indicate Whether the Products in Fact Come From Pasture-Raised Hens.**

46.     Handsome Brook places an American Humane Association "certification" label on the Products, which is a paid, private arrangement between Handsome Brook and American Humane Association.

47.     This paid, private arrangement does not insulate Handsome Brook from liability for its decision to label the Products falsely as "Pasture Raised" without regard for the conditions in which the hens actually are raised.

48.     It appears that American Humane Association may have audited fewer than 10 of approximately 58 small and family farms within Handsome Brook's supply chain.

49.     Additionally, when Handsome Brook has purchased eggs in the open market for resale, it has done so without regard for whether those eggs participate in the American Humane Association program.

50.     In publicly filed documents, Handsome Brook has stated that its American Humane Certification, from a paid third-party organization, "informs consumers that [Handsome Brook's] eggs are 'pasture raised,' which is an important selling point for consumers seeking ethically[]sourced eggs." Handsome Brook therefore knows that representing its Products as "Pasture Raised" is a material component to driving sales and growth.

**III.    Handsome Brook Deceives Consumers by Labeling the Products "Pasture Raised."**

51.    By deceiving consumers about the nature and quality of its Products, Handsome Brook is able to sell a greater volume of the Products, to undercut the prices of competing products, and to take away market share from competing products, thereby increasing its own sales and profits and limiting the choices available to consumers.

52.    Handsome Brook made the false, deceptive, and misleading representations and omissions intending for consumers to rely upon these representations and omissions in purchasing the Products.

53.    Consumers lack the knowledge necessary to determine whether the Products in fact conform to the "Pasture Raised" representations and to know or to ascertain the true nature and quality of the Products. Reasonable consumers must and do rely on Handsome Brook to report honestly whether the Products are in fact pasture raised.

54.    Across all of its Products, Handsome Brook conceals the truth about the nature and quality of its "Pasture Raised" eggs.

55.    Should any consumer seek further information, Handsome Brook's own website declares: "We are strongly committed to the highest standards of quality pasture raised eggs, the ethical and humane treatment of our hens, the well being of our family farms, and fair trade practices."[8]

56.    Although it is not necessary to show that consumers were deceived in fact, Handsome Brook intended for consumers to rely on its representations, and hundreds of thousands of reasonable consumers did in fact so rely

57.    Handsome Brook incorporated in 2007 and began distributing "pasture raised

---

[8]       http://www.handsomebrookfarm.com (last visited July 31, 2016).

eggs" locally in 2008. Since then, Handsome Brook has expanded its distribution network to include retail stores nationwide, including Kroger and Harris Teeter, as well as internet retailers like Fresh Direct.

58.     Handsome Brook cultivates its image as an environmentally friendly brand that is concerned with animal welfare—the kind of company whose label claims can be trusted.

59.     For example, on its website, Handsome Brook describes its hen-raising practices as follows:

> All of our eggs are from hens who roam outdoors on acres of pasture, feeding on grass and enjoying the sunshine . . . nutrition as nature intended. Our pastures are completely pesticide free, herbicide free, and chemical free—and are rotated to promote healthy vegetation. In addition, we provide our hens supplemental feed inside the barn for snacking when they nest and come in to rest at night. This supplemental feed is comprised of all Certified Organic grain and mineral components, meaning among other things, NO GMOs whatsoever.

*See* http://handsomebrookfarm.com/pasture-raised-products/pasture-raised-organic/ (last visited July 20, 2016).

60.     Handsome Brook's website explains the company's "core values," including "sustainable practices and environmental stewardship," "providing our animal partners with safe and humane living conditions," "the financial well-being of our farmer, retail, and business partners,"     and     "providing     [customers]     the     best     product     possible."     *See* http://handsomebrookfarm.com/5-2/mission/ (last visited July 31, 2016).

61.     Handsome Brook claims to partner with 60 farms, each with an average of 5,000 hens on 12.5 acres and presents itself as an champion of small-scale, family-owned farms:

> We contract with small family farms who raise hens and following laying requirements according to our very specific Pasture Raised Standards. We commit to purchasing eggs from them, and this has enabled to us to help encourage insure [*sic*] the stability and growth of small farms. Your purchase of Handsome Brook Farm Pasture Raised Eggs literally supports small farm families!

http://handsomebrookfarm.com/5-2/supporting-family-farms/ (last visited July 31, 2016).

62.     Handsome Brook promotes the health benefits of its Products, stating:

"You are what you eat" certainly applies to eggs. It makes sense. Handsome Brook Farm's Pasture Raised hens have a naturally healthy diet, foraging outside in the fresh air—and this translates into a more nutritionally dense egg than non-pastured eggs. Studies show that Pasture Raised eggs have lower cholesterol and fat, more Vitamin A, D, and E, higher levels of omega-3 fatty acids, and higher levels of carotene.

http://handsomebrookfarm.com/faqs/ (last visited July 31, 2016).

63.     Handsome Brook also promotes the taste benefits of its "pasture raised" eggs with its slogan, "Taste the Difference." *See* http://handsomebrookfarm.com/faqs/ (last visited July 31, 2016).

64.     Betsy Babcock, co-founder of Handsome Brook, states that its hens "are outside foraging on grass and bugs. That makes a fundamental difference in the taste of the egg." *See* "Disruptive Entrepreneurs Seize Opportunity, Take on Sector Giants," *Investor's Business Daily*, Feb. 4, 2016, available at http://www.investors.com/news/management/leaders-and-success/disruptive-entrepreneurs-seize-opportunity-take-on-sector-giants/ (last visited June 15, 2016).

65.     Handsome Brook prominently labels the Products, in a large font, "Pasture Raised." The words "Pasture Raised" are larger than the name of the company.

66.     The front labels prominently display a graphic that depicts a hierarchy of egg-production practices, with "caged" at Level 1, "cage-free" at Level 2, "organic" at Level 3, and "pasture raised" at Level 4. The graphic conveys the message that Handsome Brook's "Pasture Raised" eggs are superior to competing, "non-pastured" eggs.

67.     Handsome Brook reinforces its "pasture raised" claims by superimposing these representations over a photograph that depicts a bucolic red barn, out of which gazes a robust-and healthy-appearing hen.

68.   Handsome Brook states, on its website:

> True Pasture Raised, means just that! Pasture Raised layer hens that forage freely outdoors on acres of lush, green pasture with protective cover and are able to nest and sleep safely indoors at night with plenty of room to roam, perch, and exhibit natural chicken behavior.
>
> Handsome Brook Farm hens actually go outdoors and are encouraged to graze and forage to their heart's content and are provided acres of real pasture to forage!
>
> Our hens spend a large portion of their days outdoors on pasture (weather permitting, of course) and our flock are Certified by American Humane as Pasture Raised. They also have roomy indoor nesting space, with multiple perches and can exhibit normal chicken behavior like dust bathing, free movement, and foraging for grass and bugs. They are encouraged to move freely between indoors and outdoors.

*See* http://handsomebrookfarm.com/whats-the-difference/ (last visited July 31, 2016).

69.   Handsome Brook's conduct in labeling and marketing the Products as "Pasture Raised" deceived and/or was likely to deceive the public. Consumers were deceived into believing the Products were uniformly pasture-raised. Instead, the Products include eggs from hens not raised in conditions that any reasonable consumer would associate with "Pasture Raised."

70.   Consumers cannot discover the true nature of the Products from reading the label. Consumers cannot discover the true nature of the Products even by visiting Handsome Brook's website, which is replete with representations that its Products are "Pasture Raised" and descriptions of the conditions in which its "Pasture Raised" hens live. Discovery of the true nature and quality of the Products requires information that is not available to the average reasonable consumer.

71.   Handsome Brook deceptively and misleadingly conceals material facts about the Products, namely, that the Products include eggs from hens who are not "Pasture Raised."

72.   Consumers are not at fault for failing to discover Handsome Brook's wrongs

earlier, and had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice.

73.     The acquisition and production process Handsome Brook uses for the Products is known only to Handsome Brook and its suppliers. Handsome Brook has not disclosed such information to consumers. Upon information and belief, Handsome Brook has purchased non-pasture-raised eggs from various suppliers to sell under its "Pasture Raised" label and maintains a network of suppliers whose hens may not be pasture-raised.

74.     To this day, Handsome Brook continues to conceal and suppress the true nature, identity, source, and method of production of the Products, tolling the statute of limitations on claims against it.

**IV.     Handsome Brook Intended for Consumers to Rely Upon the False and Misleading Representations.**

75.     Handsome Brook holds itself out to the public as a trusted producer of pasture-raised eggs.

76.     Handsome Brook knew what representations it made on the Product labels and in its marketing materials, and also knew that many of the Products came from hens not in conditions that a reasonable consumer would consider "Pasture Raised."

77.     Handsome Brook thus knew all the facts demonstrating that the Products were mislabeled and falsely advertised.

78.     In making false, misleading, and deceptive representations and omissions about the Products, Handsome Brook knew and intended that consumers would purchase the Products when consumers would otherwise purchase competing products, including eggs from hens truly pasture-raised.

79.    When consumers purchase eggs that purport to be "Pasture Raised," they expect, among other things, that the eggs came from hens who receive adequate sunlight and air, unfettered daytime access to the outdoors, and sufficient space to extend their wings and engage in other behaviors typical of chickens, including significant square footage, per bird, of pasture.

80.    In making the false, misleading, and deceptive representations and omissions, Handsome Brook knew and intended that consumers would purchase the Products in lieu of eggs that were not labeled "Pasture Raised," furthering Handsome Brook's private interest of increasing sales of its Products and decreasing the sales of the pasture-raised eggs that are truthfully marketed by its competitors.

81.    In making the false, misleading, and deceptive representations and omissions, Handsome Brook knew and intended that consumers would purchase the Products in lieu of more expensive eggs that were truthfully labeled as "pasture raised," furthering Handsome Brook's private interest of increasing sales of its Products and decreasing the sales of the pasture-raised eggs that are truthfully marketed by its competitors

82.    In making the false, misleading, and deceptive representations and omissions, Handsome Brook knew that many consumers prefer pasture-raised eggs, and that many consumers will not purchase eggs unless they come from pasture-raised hens.

**V.    Handsome Brook Benefits From Its Misleading Representations and Omissions.**

83.    Handsome Brook labels and advertises its Products in large, bold font as "Pasture Raised," and has profited handsomely as a result.

84.    Over the past two years, approximately, the number of hens producing eggs for Handsome Brook has grown by some million birds, or more. This astounding growth, unprecedented in the market for ethically sourced eggs, is due in significant measure to

Handsome Brook's misleading representations and omissions.

85.     *Inc. Magazine* recently named Handsome Brook one of the top 500 fastest growing businesses in the country.

86.     As the intended, direct, and proximate result of Handsome Brook's false, misleading, and deceptive representations and omissions, Handsome Brook has sold more of the Products, at higher profits, at the expense of the consuming public. As a direct and proximate result of its deception, Handsome Brook also deceptively obtained other benefits, including the higher value associated with a "Pasture Raised" brand, redirecting sales to it and away from its competitors, and harming the public and the market.

87.     Upon information and belief, Handsome Brook has failed to remedy the problem with the Products, thus causing future harm to consumers. Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is.

88.     Handsome Brook has failed to provide adequate relief to members of the consuming public as of the date of filing this Complaint. Handsome Brook continues to distort and damage the market for pasture-raised eggs.

89.     Accordingly, Plaintiff OCA seeks declaratory relief in the form of an order declaring Handsome Brook's conduct to be unlawful, as well as injunctive and equitable relief disclosing and putting an end to Handsome Brook's misleading and unfair business practices, including a change in Handsome Brook's agricultural practices so that the Products are pasture-raised as labeled and marketed, or an injunction against the use of the "Pasture-Raised" label.

## CAUSE OF ACTION

## VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT

90.     Pursuant to D.C. Code §§ 28-3905(k)(1) and 28-3905(k)(2), the OCA brings this Count against Handsome Brook on behalf of the general public of the District of Columbia, for Handsome Brook's violation of DCCPPA, D.C. Code § 28-3901, *et seq.*

91.     Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

92.     Handsome Brook has labeled its Products as "Pasture Raised" and has otherwise presented an image and marketing materials suggesting that the Products are pasture-raised, when in fact many of the Products came from hens that were not pasture-raised.

93.     Handsome Brook's labeling and advertising of the Products misrepresents, tends to mislead, and omits facts regarding the source, characteristics, standard, quality, and grade of the Products.

94.     Handsome Brook's misleading labeling and advertising include statements that the Products are "Pasture Raised" and come from hens who enjoyed "ethical and humane treatment."

95.     Handsome Brook's labeling and marketing materials make representations and use innuendo that tends to mislead reasonable consumers into believing that the Products came from hens who were pasture-raised. The representations omit the truth about the Products.

96.     The Products lack the characteristics, ingredients, benefits, standards, qualities, or grades that Handsome Brook states and implies in its labeling and advertisements.

97.     These misstatements, innuendo, and omissions are material and have the tendency

to mislead.

98.    Handsome Brook did not intend to sell the Products as advertised.

99.    The facts as alleged above demonstrate that Handsome Brook has violated the DCCPPA, D.C. Code § 28-3901 *et seq.* Specifically, Handsome Brook has violated D.C. Code § 28-3904, which makes it an unlawful trade practice to:

(a)    represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

(d)    represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e)    misrepresent as to a material fact which has a tendency to mislead;

(f)    fail to state a material fact if such failure tends to mislead;

(f-1)    [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; ... [or]

(h)    advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

100.    The DCCPPA makes such conduct an unlawful trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904.

101.    Though the OCA need not show proof of deception to succeed on its DCCPPA claim, consumers were in fact deceived. Handsome Brook knew or should have known that reasonable consumers would believe that its Products were "Pasture Raised" as labeled and advertised.

102.    The OCA has a sufficient nexus to consumers of the Products to adequately represent those interests.

103.    Because Handsome Brook misrepresents the characteristics, ingredients, and benefits of Products; misrepresents the standard, quality, and grade of the Products;

misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Products; and advertises the Products without the intent to sell the products as advertised, Handsome Brook's labeling and marketing of the Products as "Pasture Raised" violates D.C. Code §§ 28-3904(a), (d), (e), (f), (f-1), and (h).

104.    Handsome Brook is a "person" within the meaning of D.C. Code § 28-3901(a)(1), is a merchant under § 28-3901(a)(3), and provides "goods" within the meaning of § 28-3901(a)(7).

105.    Pursuant to D.C. Code § 28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

106.    Pursuant to D.C. Code § 28-3905(k)(1)(D)(i), "a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."

107.    Plaintiff OCA is a "person" within the meaning of D.C. Code § 28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code § 28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code § 28-3901(a)(15).

108.    OCA brings this Count against Handsome Brook for Handsome Brook's violation

of the DCCPPA, D.C. Code § 28-3901 *et seq.*

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff OCA prays for judgment against Handsome Brook and requests the following relief:

    A.    a declaration that Handsome Brook's conduct is in violation of the DCCPPA;

    B.    an order enjoining Handsome Brook's conduct found to be in violation of the DCCPPA, as well as corrective advertising;

    C.    an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law; and

    D.    such further relief, including equitable relief, as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: August 19, 2016

Kim E. Richman
**THE RICHMAN LAW GROUP**
D.C. Bar No. 1022978
krichman@richmanlawgroup.com
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

**ANIMAL LEGAL DEFENSE FUND**
Carter Dillard
D.C. Bar No. 492945
cdillard@aldf.org
170 East Cotati Avenue
Cotati, CA 94931
Telephone: (707) 795-2533
Facsimile: (707) 795-7280

*Attorneys for Plaintiff Organic Consumers Association*



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Organic Consumers Association
_____
Plaintiff

vs.                                                   Case Number  **2016 CA 006223 B**

Handsome Brook Farm, LLC
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim Richman
_____
Name of Plaintiff's Attorney                          _Clerk of the Court_

The Richman Law Group
_____
Address                                         By _____
81 Prospect Street, Brooklyn NY 11201                      Deputy Clerk

(718) 705-4579
_____
Telephone                                       Date  **08/22/2016**

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ።

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### 500 Indiana Avenue, N.W., Suite 5000
### Washington, D.C. 20001 Teléfono: (202) 879-1133

Organic Consumers Association
_____
                                    Demandante

contra

Handsome Brook Farm, LLC
_____                    Número de Caso: _____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Kim Richman                                              _SECRETARIO DEL TRIBUNAL_
Nombre del abogado del Demandante

The Richman Law Group                          Por: _____
Dirección                                                              Subsecretario
81 Prospect Street, Brooklyn NY 11201

(718) 705-4579                                       Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요    ያስፈልጋል ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Organic Consumers Association
_____
Plaintiff

vs.                                          Case Number   **2016 CA 006223 B**

Handsome Brook Farm Group 2, LLC
_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim Richman
_____
Name of Plaintiff's Attorney                    _Clerk of the Court_

The Richman Law Group
_____           By _____
Address                                              Deputy Clerk
81 Prospect Street, Brooklyn NY 11201

(718) 705-4579
_____           Date   **08/22/2016**
Telephone
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

Organic Consumers Association
_____
                              Demandante

        contra                                      Número de Caso: _____

Handsome Brook Farm Group 2, LLC
_____
                              Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Kim Richman                                      *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

The Richman Law Group                 Por: _____
_____
Dirección                                              Subsecretario
81 Prospect Street, Brooklyn NY 11201
_____

(718) 705-4579                             Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요           የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Organic Consumers Association

Case Number: __2016 CA 006223 B__

vs

Date: 8/19/16

Handsome Brook Farm, LLC, et al.

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* <br> Kim Richman | Relationship to Lawsuit <br> ☒ Attorney for Plaintiff |
| Firm Name: <br> The Richman Law Group | ☐ Self (Pro Se) |
| Telephone No.:               Six digit Unified Bar No.: <br> (718) 705-4579          1022978 | ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury          ☐ 6 Person Jury          ☒ 12 Person Jury

Demand: $ _____          Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____     Judge: _____     Calendar #: _____

Case No.: _____     Judge: _____     Calendar#: _____

---

**NATURE OF SUIT:**     *(Check One Box Only)*

## A. CONTRACTS

### COLLECTION CASES

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
      Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
      Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
      Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
      Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
      Under $25,000 Consent Denied

## B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

## C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☒ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
      Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
      Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

8/19/16
_____
Date



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

ORGANIC CONSUMERS ASSOCIATION
    Vs.                                  C.A. No.       2016 CA 006223 B
HANDSOME BROOK FARM, LLC et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge JEANETTE J CLARK
Date:  August 22, 2016
Initial Conference: 9:30 am, Friday, November 18, 2016
Location:  Courtroom 221
           500 Indiana Avenue N.W.

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc