**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ORGANIZATION CONSUMERS ASSOCIATION**, <br><br> Plaintiff, <br><br> v. <br><br> **HANDSOME BROOK FARM GROUP 2, LLC and DOE CORPORATION NOS. 1-10,** <br><br> Defendants. | Case No. 16-cv-01906 (CRC) |

**OPINION AND ORDER**

Plaintiff Organic Consumers Association ("OCA") is a Minnesota-based, public-interest organization that strives to "educate consumers," "pressure food companies to adopt honest labeling practices," and "advocate for outdoor access and pasture standards for organic animals." Compl. ¶¶ 19–21.  Defendant Handsome Brook[1] is a farm located in upstate New York that supplies "pasture raised" eggs to grocery stores nationwide, including in the District of Columbia.  The term "pasture raised" typically signifies that the hens laying the eggs have ample tracts of pasture on which to roam and forage.

OCA purchased Handsome Brook's "pasture-raised" branded eggs from a D.C. supermarket in order to investigate whether the labeling on the carton honestly conveyed the hens' living conditions to consumers.  Claiming it did not, OCA filed suit in the Superior Court for the District of Columbia alleging that Handsome Brook is violating the D.C. Consumer Protection Procedures Act ("DCCPPA"), D.C. Code § 28-3904 et seq., by using false, deceptive, and misleading labels.

---

[1] The named defendants include Handsome Brook Farm, LLC; Handsome Brook Farm Group 2 LLC; and Doe Corporation Nos. 1–10, but they are collectively referred to as "Handsome Brook."  In addition to New York, the defendants are also citizens of Delaware and Connecticut. Def.'s Opp'n Mot. Remand ("Opp'n") 2.

OCA brings this action on behalf of itself and the general public, under the private attorney general provision of the statute, § 28-3905(k)(1), seeking only injunctive relief.  Pl.'s Mem. Supp. Mot. Remand ("MTR") 1–2.  The relief sought would require Handsome Brook to halt its "false marketing and sale of the [relevant] [p]roducts" as well as to issue a "corrective advertising campaign to inform the public of the true nature of the [p]roducts."  Def.'s Opp'n 2.

Handsome Brook timely removed the action, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332(a).  OCA now moves to remand the case to the Superior Court for lack of subject matter jurisdiction, and additionally requests an award of costs and fees incurred as a result of the remand litigation.  While OCA does not dispute that the parties are completely diverse, it maintains that Handsome Brook cannot meet the $75,000 amount-in-controversy requirement.  Handsome Brook responds by arguing, with supporting affidavits, that the amount in controversy far exceeds $75,000 if the Court were to consider either the cost of complying with a court-ordered injunction or the value of attorneys' fees recoverable under the statute.  For the reasons discussed below, the Court will grant OCA's motion and remand the action.

**I.     Standard of Review**

Removal is only proper if the case could have been brought in federal court in the first place.  28 U.S.C. § 1441(a).  The party seeking removal has the burden to prove that federal jurisdiction exists.  See Hood v. F. Hoffman-La Roche, Ltd., 639 F. Supp. 2d 25, 28 (D.D.C. 2009).  When the amount in controversy is at issue, the parties are permitted to submit proof, and if the removing party is able to show by a preponderance of evidence that the threshold requirement has been met, the district court may exercise jurisdiction over the case.  See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553–54 (2014).  Bearing in mind the risk of encroaching on state courts' purview, courts construe removal jurisdiction narrowly, Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941), and tend to resolve factual ambiguities in favor of

remand.  Witte v. General Nutrition Corporation, 104 F. Supp. 3d 1, 3 (D.D.C. 2015); Nat'l Consumers League v. Flowers Bakeries, LLC, 36 F. Supp. 3d 26, 30 (D.D.C. 2014).

**II.     Analysis**

A.     Diversity Jurisdiction

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – citizens of different States[.]"  28 U.S. Code § 1332(a).  With complete diversity satisfied here, the Court must determine whether Handsome Brook has met its burden of demonstrating that the amount in controversy exceeds $75,000.  Handsome Brook argues that the amount-in-controversy requirement is satisfied because, if OCA's suit were successful, the costs of complying with the requested injunction and the statutory assessment of attorney fees would each well exceed $75,000.

1.     Costs Associated with Injunctive Relief

Handsome Brook has submitted evidence establishing that the cost of complying with OCA's requested injunction would easily surpass the $75,000 threshold.  An unrebutted declaration from the farm's owner details the required compliance costs, including:  destroying six weeks of inventory worth $110,000; hiring a branding and design firm to re-design labels for six product SKUs at a cost of approximately $36,000; and launching a corrective advertising campaign costing at minimum $113,000.  Exhibit A Second Decl. of Bryan Babcock; cf. Wexler v. United Air Lines, 496 F. Supp. 2d 150, 154 (D.D.C. 2007) (finding that a defendant's costs to comply with an injunction were too speculative because it did not "submit supporting declarations or affidavits from its employees . . . nor does it provide any evidence to support its claims.").

OCA's response is twofold.  It first urges the Court to wholly disregard Handsome Brook's compliance costs when calculating the amount in controversy.  Pl.'s Reply MTR ("Reply") 4.  Considering the defendant's costs, OCA suggests, would run afoul of the "non-aggregation"

principle, which prohibits the aggregation of smaller-value claims by multiple plaintiffs to meet the $75,000 jurisdictional requirement. See Snyder v. Harris, 394 U.S. 332, 335 (1969) ("[T]he separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional requirement."). OCA argues that the Court should instead assess the amount in controversy solely from the plaintiff's viewpoint, i.e. by measuring "the value of the plaintiff's right that is to be protected, and not the extent of the monetary loss or damage that has been suffered." Witte, 104 F. Supp. 3d at 4 (citing 15 Moore's Federal Practice §102.109 (Matthew Bender 3d ed.)).

This argument conflicts with D.C. Circuit precedent. The D.C. Circuit has adopted the "either-viewpoint" approach to calculating amounts in controversy—which allows for consideration of either the value of the plaintiff's requested relief or the defendant's potential costs—in cases where only equitable relief is sought. See Tatum v. Laird, 444 F.2d 947, 951 (D.C. Cir. 1971), rev'd on other grounds, 408 U.S. 1, 92 (1972) ("[P]articularly where purely injunctive relief is sought, the amount in controversy may be measured by either the value of the right sought to be gained by the plaintiff . . . (or) the cost (of enforcing that right) to the defendant."). In Tatum, the Court found there was subject-matter jurisdiction because the cost of an injunction likely exceeded the jurisdictional amount requirement. Id. Since then, the D.C. Circuit has twice cited Tatum when including the defendant's costs in the amount-in-controversy calculation. See Witte, 104 F. Supp. 3d at 4–5 (citing Smith v. Washington, 593 F.2d 1097, 1099 (D.C. Cir. 1978) and Comm. For GI Rights v. Callaway, 518 F.2d 466, 472 (D.C. Cir. 1975)).[2] The D.C. Circuit has subsequently

---

[2] While all of these cases involved an analysis of federal question jurisdiction under statutes with amount-in-controversy threshold requirements, the D.C. Circuit did not differentiate federal question jurisdiction from diversity jurisdiction when endorsing the "either-viewpoint" approach.

recognized the potential tension between the cost-to-the-defendant test and the "non-aggregation" principle, but has left its prior precedent intact. See Fenster v. Schneider, 636 F.2d 765, 767 n.1 (D.C. Cir. 1980). And when faced with this exact issue, the majority of courts in this district have likewise followed the "either-viewpoint" rule. See Witte, 104 F. Supp. 3d at 5 (citing Nat'l Consumers League v. Bimbo Bakeries USA, 46 F. Supp. 3d 64, 74 (D.D.C. 2014); Geo Specialty Chems., Inc. v. Husisian, 951 F. Supp. 2d 32, 39–40 (D.D.C. 2013); Lurie v. Mid–Atl. Permanente Med. Grp., P.C., 729 F. Supp. 2d 304, 332 (D.D.C. 2010); Wexler, 496 F. Supp. 2d at 153). But see General Mills, 680 F. Supp. 2d at 140 (refusing to include the cost to the defendant in the amount in controversy); Breakman, 545 F. Supp. 2d at 105 (same).

OCA's next argument fares better. It contends that because it brought this representative action on behalf of the general public, the defendant's compliance costs should be divided amongst the consumers that would benefit from the injunction. Indeed, a number of courts in this district have taken this so-called "cost-running" approach when calculating the amount in controversy. See Witte, 104 F. Supp. 3d at 5–6 (citing Breakman v. AOL LLC, 545 F. Supp. 2d 96, 106 (D.D.C. 2008) (dividing AOL's compliance costs of $255,800 by the 28,451 consumers affected by the action when estimating the amount in controversy)). To do otherwise would "circumvent the non-aggregation principle articulated in Snyder and Zahn." Witte, 104 F. Supp. 3d at 6; see also Flowers Bakeries, 36 F. Supp. 3d at 31–32. Consistent with this prior authority, the Court finds that the individual cost to *each* plaintiff must exceed $75,000 for jurisdiction to exist. Because Handsome Brook has made no attempt to show that the $75,000 threshold is met for each plaintiff, it has not established that diversity jurisdiction exists. See Witte, 104 F. Supp. 3d at 6.

### 2. Attorneys' Fees

Handsome Brook also argues that if OCA were to prevail, it would be entitled to statutory attorneys' fees and costs that would exceed $75,000, thus providing another basis for diversity

jurisdiction. Def.'s Opp'n 11–12; Ex. B Decl. of Kim E. Richman. Courts in this district generally agree that if attorneys' fees are recoverable by statute, they can be included in the amount-in-controversy calculation but must be apportioned amongst the individual consumers. And only each individual plaintiff's share can be considered as part of the amount in controversy. See Bimbo Bakeries, 46 F. Supp. 3d at 73; Zuckman v. Monster Beverage Corp., 958 F. Supp. 2d 293, 301 (D.D.C. 2013); Nat'l Consumers League v. General Mills, Inc., 680 F. Supp. 2d 132, 141 (D.D.C. 2010).[3] But when, like here, a plaintiff "is suing under [the private attorney general provision of the DCCPPA] and is recovering no independent damages, the amount of attorneys' fees applicable to it for jurisdictional purposes are $0." Bimbo Bakeries, 46 F. Supp. 3d at 73. Therefore, the jurisdictional requirement is not satisfied and the Court cannot properly exercise diversity jurisdiction over this case.

In reaching this conclusion, the Court appreciates that application of the cost-running and "non-aggregation" principles effectively precludes certain DCCPPA suits from being removed to federal courts. But considering the weight of authority supporting remand, the importance of respecting a plaintiff's choice of forum, and federalism concerns, "the Court sees no problem with articulating a rule that would, in effect, exclude just one category of recovery from diversity jurisdiction eligibility." Bimbo Bakeries, 46 F. Supp. 3d at 64 n.3.

---

[3] The courts are split, however, as to whether the fees should be apportioned on a pro-rata basis, divided equally amongst all plaintiffs, or by using a weighted-percentage approach. Compare Breakman, 545 F. Supp. 2d at 107–08 (commenting favorably on other courts' use of a pro-rata standard) with Zuckman, 958 F. Supp. 2d at 301 (calculating one plaintiff's share of attorneys' fees as 33% of the estimated total because he was the initial plaintiff so his attorneys would necessarily work more than the pro-rata portion of the total fees). The Court need not resolve that issue here because both the Breakman and Zuckman plaintiffs, unlike OCA, were seeking statutory damages as well as injunctive relief.

### B. Plaintiff's Fees and Costs

Finally, OCA requests reimbursement of fees and costs incurred as a result of the remand litigation. Pl.'s MTR 9–10. The Supreme Court has held that "the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Given the lack of recent, controlling authority on how the "non-aggregation" and "either-viewpoint" doctrines interact, the Court finds that Handsome Brook had an objectively reasonable and good-faith basis for its attempt at removal. Therefore, the Court will decline to award OCA any fees and costs associated with the remand litigation.

### III. Order

For the foregoing reasons, it is hereby

**ORDERED** that [10] Plaintiff's Motion to Remand shall be **GRANTED** and the Plaintiff's Request for Attorneys' Fees shall be **DENIED**. It is further

**ORDERED** that the Clerk remand the action to the Superior Court for the District of Columbia.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date:   November 18, 2016